**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jill Ann Alexander, | No. CV11-02465-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jill Ann Alexander filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, alleging a disability onset date of November 27, 2008.   Tr. 180-81.   Following an administrative hearing on January 18, 2011 (Tr. 25-83), the administrative law judge ("ALJ") issued a decision on February 25, 2011, finding that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 11-19).   On October 19, 2011, the Appeals Council denied Plaintiff's request for review (Tr. 1-3), making the ALJ's decision the final decision of Defendant for purposes of judicial review.   *See* 20 C.F.R. § 422.210(a).   Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g).   The parties have not requested oral argument.   For the reasons that follow, the Court will remand the case for further proceedings.

**I.    Background.**

Plaintiff has three years of college education, but did not obtain a degree.   Tr. 31-32.   She has worked as a financial sales representative, educational course sales

representative, customer service representative, housecleaner, and food service manager, waitress, and bartender.  Tr. 35-40.  Her last day of work was November 27, 2008, and she was formally discharged from service in January 2009.  Tr. 32.  Plaintiff alleges disability since November 27, 2008 due to pain and reflexive sympathetic dystrophy ("RSD") in her right arm.  Tr. 41-42.

## A.   Medical Evidence.

In 2008, prior to Plaintiff's alleged disability onset date, she presented to Arrowhead Family Health Center with complaints of sharp pain in her right shoulder precipitated by a fall while rollerblading in 2002 and a tear in her right rotator cuff in 2006.  Tr. 338.  Plaintiff described constant pain radiating into her right arm, hand, and fingers, and rated the pain as moderate to severe.  *Id.*  Plaintiff continued to seek treatment at Arrowhead Family Health Center approximately once a month through October 2009 for pain in her right arm and shoulder.  She was diagnosed with RSD and prescribed pain medication.  Tr. 303-08, 312-20, 325-27, 490-501.

Plaintiff saw pain specialist, Dr. Steven Laitin, twice in December 2008 and five times during the summer of 2009.  Dr. Laitin administered stellate ganglion blocks on the nerves in Plaintiff's arms.  Tr. 384-422, 469-74.  In a July 14, 2009 report, Dr. Laitin notes that Plaintiff "reports doing fairly well until doing some exercises at physical therapy that seemed to flare up her problem," and that she "still seems quite functional in that she was able to go on vacation to Mexico and stayed relatively active."  Tr. 399. Plaintiff also stated, however, that "if she uses her right shoulder too much, her hand turns blue and purple and she is in a great deal of pain."  *Id.*  In a September 1, 2009 report, Dr. Laitin notes that Plaintiff "had been responding quite well as far as the RSD is concerned," and that "[a]t this point the signs and symptoms of RSD appear to be minimal or almost nonexistent."  Tr. 385.  Dr. Laitin did note that Plaintiff appeared to experience "worsening of right shoulder symptoms, but these appear to be structural in nature[.]"  *Id.*  He stated that the pain "may actually be just muscular in nature," but that it was "kind of hard to tell."  Tr. 387.

In January 2010, Plaintiff began seeing Dr. Jeffrey Bucholz at The Pain Center of Arizona.  Tr. 645-48.  Plaintiff reported that she had torn her rotator cuff "approximately seven times" and that she had received 20 stellate ganglion injections with temporary relief, physical therapy, and acupuncture.  Tr. 648.  Dr. Bucholz noted that the evaluation was limited because of Plaintiff's expressed level of pain.  *Id.*  At the next visit, Dr. Bucholz ordered an MRI of Plaintiff's right shoulder and cervical spine.  Tr. 651.  The March 5, 2010 MRI produced normal, unremarkable results, with no evidence of rotator cuff tear.  Tr. 541.  On April 6, 2010, Dr. Bucholz treated Plaintiff with a spinal cord stimulator, which did not provide any relief.  Tr. 660.  Dr. Bucholz also performed a series of right stellate ganglion blocks, and noted that Plaintiff "continues to feel that the stellate ganglion blocks are successful in improving her pain symptoms" and that her "pain range of motion and functionality has improved."  Tr. 677.

From December 2009 through August 2010, Plaintiff went to the Phoenix Interfaith Counseling Center approximately once a week for individual and group therapy and psychiatric treatment.  Tr. 542-644.  Plaintiff was assigned a Global Assessment Functioning ("GAF") score of 79.[1]  Tr. 554.  Plaintiff has not claimed mental or psychological impairments from anything other than pain; she sought counseling in techniques for living with constant severe pain.  Doc. 12.

In July 2009, state agency physician Dr. Ernest Griffith reviewed Plaintiff's medical records and opined that, despite Plaintiff's right arm RSD, she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk six hours each in an eight-hour workday; occasionally push, pull, reach, handle, and feel with her right arm with no restrictions in her left arm; frequently climb ramps and stairs, balance, stoop, kneel, and crouch; occasionally crawl; and never climb ladders, ropes, or scaffolds.  Tr. 376-83.  In January 2010, state agency physician Dr. Thomas Disney reviewed

---

[1]  The GAF scale ranges from 1 to 100 and reflects a person's overall psychological, social, and occupational functioning.  *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3 595, 598 n.1 (9th Cir. 1999); *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

Plaintiff's medical records and agreed with Dr. Griffith's opinion.  Tr. 440.

Also in January 2010, occupational therapist Mary Louise Hymen completed an assessment of Plaintiff's ability to perform work-related activities.  Tr. 529-38.  Ms. Hymen opined that Plaintiff had moderate to severe strength deficits with her right grip and an essentially non-functional right arm due to lack of strength.  Ms. Hymen did not test Plaintiff's ability to perform bilateral lifting, pushing, pulling, or carrying tasks, but opined that Plaintiff was unable to handle, lift, push, pull, or reach overhead; could frequently sit and balance; and could occasionally stand and walk.  *Id.*

Dr. Marcel Van Eerd performed a psychological evaluation of Plaintiff in January 2010.  Tr. 434-38.  Dr. Van Eerd noted that Plaintiff was anxious and had depression associated with her physical pain.  He opined that Plaintiff had mild limitations in concentration and persistence, but no limitations in understanding and remembering, social interaction, or adaptation.  Tr. 434-38.

The same month, state agency psychologist Dr. Heather Barrons reviewed Plaintiff's medical records and opined that Plaintiff had only non-severe mental impairments.  Tr. 441-53.  She opined that Plaintiff had no restriction in her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation.  *Id.*

### B. Hearing Testimony.

At the January 18, 2011 hearing, Plaintiff testified that around the time of her alleged onset date in November 2008 she became unable to work due to the "burning, tearing sensation" in her neck and right arm.  Tr. 41-43.  She testified that she took medication that helped control her pain to some extent, that but it had "wicked side effects," including memory loss and "fuzzy" thoughts.  Tr. 46-48.  She claimed that she reported these side effects to her doctors, but that there were no "good alternatives."  Tr. 49.  Plaintiff testified that she had depression, anxiety, and attention deficit disorder, for which she took medication and sought therapy.  Tr. 44, 49-50.  She estimated that she could lift "six to eight ounces" with her right arm (Tr. 51), and that she had no problems

with her left hand or arm (Tr. 52-53).  She estimated that she could sit still for "seven to eight minutes" before her right arm started "seiz[ing] and contract[ing] and it shakes," and could stand for "about eight-and-a-half minutes" at a time.  Tr. 53-55, 58.

The ALJ asked the vocational expert, Mr. Komar, about a hypothetical person of Plaintiff's age and education who is limited to lifting and carrying 50 pounds occasionally and 10 pounds frequently,[2] can stand and walk for six hours in an eight-hour work day, can sit for six hours in an eight-hour work day, is limited to occasional pushing and pulling with the right upper extremity, cannot climb ladders, rope, or scaffolds, can frequently climb ramps and stairs, and can occasionally reach, handle, and feel with the right upper extremity.  Tr. 74.  Mr. Komar responded that the person could do all of Plaintiff's past work, except for the housecleaner position.  *Id.*  The ALJ then asked Mr. Komar about an individual who can lift up to 36 pounds occasionally with their right hand, can stand occasionally, can sit frequently, can use their right upper extremity for 15 minutes at a time and then must rest, and is not able to do overhead or elevated reaching or elevated work.  *Id.*  Mr. Komar asked for clarification regarding how long this person would have to rest their right arm after 15 minutes of use.  Tr. 75.  The ALJ consulted the FCE table, which did not specify the amount of rest required.  *Id.*  The ALJ suggested five minutes of rest.  *Id.*  Mr. Komar responded that this hypothetical person could still function as a financial services sales representative or a food service manager.  *Id.*  Finally, the ALJ asked about a hypothetical person who is limited to sedentary work and occasional pushing and pulling with the right upper extremity, can use the right upper extremity for 15 minutes at a time and then must rest that arm for 5 minutes, and Mr. Komar replied that this hypothetical person could not perform any of Plaintiff's past work, but could still do work available in the national economy, specifically, that of an appointment clerk.  Tr. 76.  Based on Mr. Komar's testimony, the ALJ concluded that

---

[2] Defendant suggests that "50 pounds" is a typing error and should have been "20 pounds" because the ALJ was asking about an individual who could perform the exertional demands of light work, i.e. lifting and carrying 20 pounds occasionally and 10 pounds frequently.  Doc. 13, at 6 n.5; *see* 20 C.F.R. § 404.1567(b).

Plaintiff could perform her past work as a financial sales representative, educational course sales representative, customer service representative, and food service manager, waitress, and bartender.  Tr. 18-19.

### C.    Appeals Council Evidence.

Plaintiff submitted additional treatment records from Dr. Bucholz (Tr. 756-75) and Dr. Pirie (Tr. 726-29) to the Appeals Council.  The records show that in late 2010, Plaintiff began complaining of neck pain and Dr. Bucholz gave her cervical epidural steroid injections, after which he noted that Plaintiff did "fabulously well" and was "essentially pain free for two weeks" before the symptoms began to return, though not to the "previous preinjection level."  Tr. 762; *see* Tr. 756-67.  In January 2011, Dr. Bucholz noted that although he "believe[d] it to be both reasonable and medically necessary to continue with the prescribed pain management plan," Plaintiff did "not wish to pursue any additional injection therapy at this time."  Tr. 768-71.

### D.    Additional Evidence.

Plaintiff has attached new post-hearing evidence to her opening brief.  *See* Doc. 12, at 6.  This evidence consists of records from the Pain Center of Arizona from March 2011 to March 2012, and a July 2011 Functional Capacity Evaluation completed by occupational therapist Mary Louise Hymen.  Docs. 12-1, 12-2, 12-3, 12-4.

## II.    Standard of Review.

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  To determine whether substantial evidence supports Defendant's decision, the Court must review the administrative record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it.  *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998).  If there is sufficient evidence to support Defendant's determination, the Court cannot substitute its

own determination.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III.    Discussion.**

Plaintiff raises eight claims: (1) the ALJ failed to apply the relevant Social Security Ruling for evaluating RSD/CRPS; (2) the ALJ failed to evaluate Plaintiff's assertions of pain and limitation pursuant to Social Security Regulations 96-7P and 8P; (3) the ALJ improperly favored non-treating source opinions, based on early and incomplete records, over the opinions of treating sources; (4) the ALJ failed to credit the treating occupational therapist's report as an acceptable medical source; (5) the ALJ failed to explain his negative credibility findings; (6) the ALJ misinterpreted and cited out of context psychological and physical evidence of pain severity; (7) the ALJ failed to consider the type, dosage, effectiveness, and side effects of medication; and (8) the ALJ ignored vocational expert testimony that was favorable to Plaintiff, and improperly applied "non medically-indicated" vocational conclusions.  Doc. 12, at 7-24.  The Court will address each of these arguments separately.

**A.    RSD/CRPS Assessment.**

The crux of Plaintiff's appeal is the ALJ's alleged failure to resolve conflicting medical evidence by re-contacting treating sources rather than simply concluding that Plaintiff was exaggerating her symptoms or was not credible because of a few instances of temporary improvement.  *See* Doc. 12, at 10.  Plaintiff emphasizes that "conflicting evidence in the medical record is not unusual in cases of RSD/CRPS due to the transitory nature of objective findings and the complicated diagnostic process involved."  Doc. 12, at 9-10 (quoting Doc. 12-4, at 6 (SSR 03-02p)).

The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  *Smolen*, 80 F.3d at 1288; *Armstrong v. Comm'r of Soc.*

- 7 -

*Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).  The ALJ may discharge this duty in several ways, including subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Smolen*, 80 F.3d at 1288.

Plaintiff vaguely asserts that the ALJ should have re-contacted her treating physicians, but does not identify any ambiguities in the evidence or explain why re-contacting the treating physicians was necessary to resolve such ambiguities.  Plaintiff bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  "An ALJ is required to [re-contact] a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  *See* 20 C.F.R. §§ 404.1512(e), 416.912(e); *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) (rejecting the argument that the ALJ should have sought more information from treating physicians when "substantially all of their medical records throughout the time they treated [the claimant] were before the ALJ" and "[t]here was nothing unclear or ambiguous about what they said").  The ALJ, with support in the record, found the evidence adequate to make a determination regarding Plaintiff's disability.  Accordingly, the ALJ did not have a duty to re-contact Plaintiff's physicians.  *See Bayliss*, 427 F.3d at 1217.

Plaintiff also argues that "[i]t does not appear anywhere in the hearing decision that the Administrative Law Judge was aware of the SSR 03-2p evaluative criteria, nor of the nature of RSD/CRPS."  Doc. 12, at 8.  SSR 03-2p provides that "[c]laims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment."  Doc. 12-4, at 7; SSR-03-2P, 2003 WL 22399117, at *6 (Oct. 20, 2003).  While the ALJ did not cite the Social Security Ruling in his decision, Plaintiff does not dispute that he followed the required sequential evaluation process in evaluating her disability claim.  *See* Tr. 11-13.  The ALJ did not commit legal error by failing to cite SSR 03-2p.

**B.**     **Plaintiff's Pain Testimony.**

Plaintiff argues that the ALJ, "beyond failing to explain why [her] fairly extensive testimony as to severe pain and limitation was not credited, wholly failed to even *mention* that testimony."  Doc. 12, at 10 (emphasis in original).  At her administrative hearing, Plaintiff described an "overwhelming pain, this burning, tearing sensation" in the subscapular area of her upper back, down her right arm, trapezoid, and right side of her neck.  Tr. 42-43.  She testified that the pain went "all the way down to the fingers," and that her "hand seizes up and . . . kind of looks like a claw[.]"  Tr. 43.  Plaintiff also testified that she would have trouble sitting "for periods of time," mostly due to problems getting comfortable because her arm would seize, contract, and shake, and that her arm "feels like there's an ape on the other side of it . . . tearing it out of its socket and then lighting it on fire."  Tr. 53-54.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible.  Tr. 16.  Contrary to Plaintiff's objection that the ALJ discounted her testimony without further explanation (Doc. 12, at 14), the ALJ gave several reasons for concluding that Plaintiff's impairment was not as severe or limiting as alleged.  Diagnostic imaging from March 2010 revealed only "mild disc bulge without spinal stenosis or cord compression" and "mild foraminal stenosis."  Tr. 16.  In the same month, a right shoulder MRI revealed "no evidence of a rotator cuff tear or other significant abnormality."  *Id.* January 2010 treatment notes from Plaintiff's visit to The Pain Center of Arizona reported normal range of motion and normal extension.  *Id.*; Tr. 647.  The ALJ took note of Dr. Pirie's remark that Plaintiff "clearly denies any significant pain issues or side effects" (Tr. 648), although this remark was made in the context of Dr. Pirie's plan to order medication for Plaintiff and may not be indicative of Plaintiff's overall pain.

During a May 2008 visit to Arrowhead Family Health Center, Plaintiff complained of moderate to severe pain radiating from her right arm, hand, and fingers, that "most of

these symptoms began [one] month ago," and that rest, heat, and trigger point injections relieved her pain.  Tr. 334.  Plaintiff also reported that "similar symptoms have been experienced on and off for 6 [years]" prior to May 2008.  *Id.*  The ALJ noted that Plaintiff was working in May 2008 and during the six prior years, and reasoned that since "there is no evidence indicating her condition severely worsened after that point, this undermines the claimant's allegation she is unable to work with her existing physical symptoms and limitations."[3]  Tr. 16.  The ALJ takes particular note of Dr. Laitin's September 2009 treatment note indicating that "the signs and symptoms of RSD appear to be minimal or almost nonexistent" (Tr. 385; *see* Tr. 16), and that "the RSD component is pretty much settled down" (Tr. 458).  Dr. Laitin's notes suggest that Plaintiff continued to experience some pain, though perhaps not due to her RSD: "The pain at this point is from increased use and appears to be from a structural point of view.  It may actually be just muscular in nature."  Tr. 458.

Plaintiff attended five physical therapy sessions, and then stopped contacting the clinic for appointments.  Tr. 364.  She was discharged on June 3, 2009 after the clinic could not contact her.  Tr. 364-65.  The ALJ found that this "undermin[ed] her report of daily physical therapy, and suggests that her symptoms were not severe enough to warrant physical therapy or medical management."  Tr. 16.  The ALJ noted that "even prior to discharge, the claimant's physical therapy notes revealed repeatedly 'good' progress toward goals and she was consistently able to correctly perform the exercises."  Tr. 16-17.  Ultimately, the ALJ concluded that the objective findings and examination results and reports did not support the alleged severity of Plaintiff's limitations, especially in light of Plaintiff's routine, conservative treatment that consisted primarily of medication, regular follow-up appointments, and physical therapy.  Tr. 17.  Objective

---

[3] At an April 2008 visit to the Arrowhead Family Health Center, Plaintiff reported tearing her right rotator cuff in 2006.  Tr. 338.  At a January 2010 visit with Dr. Pirie, Plaintiff stated that she had torn her rotator cuff "approximately seven times."  Tr. 648.  While these events could have worsened Plaintiff's symptoms, a March 2010 MRI revealed no evidence of a rotator cuff tear.  Tr. 541.

findings from physical examinations were consistently "mild," "normal," "negative," and "within normal limits," and Plaintiff consistently exhibited full strength in her upper extremities. *Id.*

In addition to objective medical evidence, the ALJ relied on Plaintiff's daily activities as a further reason to discount her pain testimony. The ALJ noted that Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 17. These activities include grocery shopping, cleaning her house, preparing meals, driving a car, and regularly attending church. *Id.* While the Ninth Circuit has cautioned that "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), the ALJ did not rely solely on Plaintiff's daily activities, but has given other legitimate reasons for discounting Plaintiff's pain testimony. The Court cannot conclude that the ALJ's evaluation of Plaintiff's pain testimony is unsupported by substantial evidence or constitutes legal error.

### C.   Weight Given to Non-Treating Sources.

Plaintiff argues that the ALJ accorded controlling weigh to the functional capacity assessment of non-treating, non-examining Social Security consultant Dr. Ernest Griffith. Doc. 12, at 11. She objects that Dr. Griffith appears to have relied, without explanation, solely on two treatment notes cited as the "12/08 exam" and the "5/09 exam" (Tr. 377) without identifying the examining and treating sources. Doc. 12, at 11. She questions "how [Dr. Griffith] made the translation of these treatment notes into the very specific categories of functional limitations on the state agency forms." *Id.* at 12.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating or an examining physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). But "[t]he opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence on the record." *Thomas v. Barnhart*,

278 F.3d 947, 957 (9th Cir. 2002).  Here, none of Plaintiff's treating physicians offered opinions regarding her work-related limitations, and none assigned a greater degree of limitation than the ALJ's assessment.  As the ALJ noted, "no objective findings or laboratory studies in the medical evidence of the record" contradict his residual functional capacity assessment or "indicate additional restrictions beyond those listed in the assessment."  Tr. 18.  The ALJ properly gave Dr. Griffith's opinion "great weight because it considers the claimant's subjective complaints and is consistent with the objective findings, opinion evidence, and the record as a whole."  Tr. 17.  This was not error.

### D.    Occupational Therapist Report.

Plaintiff contends that her records from Arrowhead Family Health Center, as a whole, tend to support the objective findings of occupational therapist Louise Hymen, rather than Dr. Griffith's assessment.  Doc. 12, at 12.  Plaintiff argues that the ALJ erred by according little weight to Ms. Hymen's findings.  *Id.* at 13.  Ms. Hymen opined that Plaintiff is unable to perform moderate and fine motor tasks with her right arm and hand.  Tr. 532, 535.  Ms. Hymen also noted that Plaintiff "scores herself at . . . 88 points [for hand function,] which places her at the less than Sedentary Physical Demand Level."  Tr. 534.

The ALJ gave Ms. Hymen's opinion little weight because she is not an acceptable medical source under 20 C.F.R. § 404.1513(a).  Tr. 17.  The ALJ may consider evidence from other medical sources, including therapists, to show the severity of a claimant's impairment and how it affects the claimant's ability to work, 20 C.F.R. § 404.1513(d)(1).  An ALJ must provide specific, legitimate reasons based on substantial evidence in the record in order to reject the testimony of a medically acceptable treating source, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009), but "other sources" under § 404.1513(d) are not entitled to the same deference, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see* § 404.1527; SSR 06-03p.  The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each

witness for doing so.  *Molina*, 674 F.3d at 1111.  Here, the ALJ noted that Ms. Hymen "assessed quite stringent limitations that are exaggerated in comparison to the clinical evidence of record," and that her opinion "heavily favors the claimant's subjective complaints and is inconsistent with the objective findings, other opinion evidence, and the record as a whole."  Tr. 17-18.  These are germane reasons for discounting Ms. Hymen's statements.  *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

While the ALJ did not explain which portions of the record contradicted Ms. Hymen's assessment, the inconsistencies are apparent.  Ms. Hymen tested Plaintiff using a computerized range of motion system, which included grip tests, hand coordination, and balance.  *See* Tr. 529-533.  The tests indicated abnormal rotation, flexion, extension, and abduction in Plaintiff's right shoulder (Tr. 530), and a 45% right hand deficit in grip strength compared to the left hand (Tr. 531).  Ms. Hymen filled out a chart, based on tests with PCE round blocks, nuts, and bolts, indicating that Plaintiff had "average" gross function with her dominant right hand, but that she was completely "unable" to perform any moderate or fine function with that hand.  Tr. 532.  No explanation is provided for these limitations.  More weight is appropriately given to opinions that are explained than to those that are not, and the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases for their conclusions.  *Molina*, 674 F.3d at 1111-12; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  Furthermore, despite her conclusion that Plaintiff was unable to perform any moderate or fine right hand function, Ms. Hymen later noted that Plaintiff "is able to write with a felt tip pen or sharpie for short periods of time with her right (dominant) hand."  Tr. 535.  While "[n]o bilateral lifting, pushing, pulling or carrying tasks were completed" on either arm "due to lack of participation of the right upper quadrant and left use was compromised due to overflow and cervical/upper trap stretch to the right with left upper extremity function" (Tr. 535), Plaintiff testified at her hearing that she could pick up a coffee mug with her left hand without any problems (Tr. 52) and that her left hand simply became fatigued from excessive use during the day (Tr. 62).

In light of the record, the ALJ did not err by concluding that Ms. Hymen's assessment was exaggerated. The ALJ gave germane reasons for discounting Ms. Hymen's opinion. To the extent that the ALJ should have given more specific reasons for finding Ms. Hymen's opinion inconsistent with the rest of the record, this error was harmless because the inconsistencies were readily apparent. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (applying a harmless error standard).

### E.    Lay Witness Statement.

In determining whether Plaintiff is disabled, the ALJ must consider lay witness testimony concerning her ability to work. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). If the ALJ discounts the testimony of a lay witness, he must give reasons that are germane to each witness. *Id.*; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.") (citations omitted).

Plaintiff's mother, Virginia Patterson, completed a function report in support of Plaintiff's application for disability insurance benefits. Tr. 206-13. The ALJ gave Ms. Patterson's statements little weight "because of their inconsistency with the objective medical evidence of record." Tr. 18. The ALJ also commented that "it is likely that the statement is biased given [Ms. Patterson's] close relationship[] with the claimant. As well, these statements, even if afforded full credibility, do not persuade [the ALJ] that the claimant is incapable of sustained gainful employment." *Id.* Plaintiff argues that the ALJ erred by discounting Ms. Patterson's testimony because his assertion of likely bias "is speculative at best, and goes far beyond relegating 'little weight' to Ms. Patterson's statements ostensibly because of their supposed inconsistency with the medical record, and patently rather suggests a presumption of bias on the part of the ALJ against the truthfulness and accuracy of [Ms.] Patterson's statements simply because of the

relationship itself between the mother and daughter." Doc. 12, at 15.

The fact that a lay witness is a family member cannot be a ground for rejecting her testimony, *Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999), but inconsistency with medical evidence is a valid reason for discrediting Ms. Patterson's statements, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason.") (citation omitted). The ALJ has not explained how Ms. Patterson's report is inconsistent with the objective medical evidence. Because the ALJ failed to provide sufficient reasons for discounting Ms. Patterson's report, the Court must determine whether this error was harmless. *See Carmickle*, 533 F.3d at 1162 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Ms. Patterson stated that Plaintiff goes outside every day, is able to shop for necessities once or twice a week for no more than 20-30 minutes at a time, prepares easy meals, and is limited to housework for 20 minutes. Tr. 207-08. Due to her pain, Plaintiff rarely sleeps for more than four hours a night, cannot manage clothing with buttons or zippers, and can shower on good days but has to use only her left hand on bad days. Tr. 209. Plaintiff can no longer ride her bicycle, go on walks, or play with her children. Tr. 210. She has limited use of her right arm and hand, and intermittent numbness in her right leg. Tr. 211. Ms. Patterson opined that Plaintiff has fewer and fewer good days, is in constant pain, and guards her right side from any contact. Tr. 213.

These statements are not obviously inconsistent with the objective medical evidence in the record. Even if the ALJ were to give full weight to Ms. Patterson's statements, however, they do not establish a greater level of disability than the ALJ found in Plaintiff's residual functional capacity assessment. *See* Tr. 15. The Court therefore concludes that the ALJ's failure to specify the inconsistencies between Ms. Patterson's statements and the medical evidence is harmless error.

**F.     Psychological and Physical Evidence of Severity.**

At step two of the sequential evaluation process, the ALJ made a threshold determination of whether Plaintiff has an impairment or combination of impairments that is "severe," which significantly affects her ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(a)(4)(ii), 404.1521(a).   The ALJ found that Plaintiff's medically determinable mental impairment of adjustment disorder with depression and anxiety and attention hyperactivity disorder does not cause more than a minimal limitation in her ability to perform basic mental work activities, and is therefore nonsevere.  Tr. 13-14. The ALJ cited the findings of Dr. Van Eerd, who assessed only mild limitations, and Dr. Barrons, who concluded that Plaintiff's mental conditions were nonsevere.  Tr. 14.

Plaintiff contends that the ALJ misinterpreted and cited out of context the psychological evidence of severity, but it is unclear what Plaintiff is arguing on this point. Plaintiff claims that her own disability report "did not allege disability due to a [discrete] mental impairment," that her mental status exam was "intact and appropriate," and that she sought counseling to help her live with chronic pain, "as distinct from both psychological counseling, and medical treatment for alleviating the pain itself."  Doc. 12, at 16-17.  She concludes that the "ALJ's characterization of this modality of treatment as being for 'depression and anxiety' is erroneous, and his conclusion that [her] limitations are only slight as evidenced by a GAF of 79 demonstrates a superficial reading and understanding" of the scale.[4]  *Id.* at 17.  Plaintiff appears to raise some objections to Dr. Van Eerd's and Dr. Barron's assessments, but the objections are unclear.  *Id.* at 18-19. She seems to take issue with the fact that the ALJ cited and accorded weight to these reports "to support his conclusions that [she] has non-severe mental impairments," but then adds that her mental impairments "[are] not at issue."  *Id.* at 19.

To the extent that Plaintiff argues that the ALJ erred by finding her mental impairment nonsevere, she has not met her burden of showing that she had severe

---

[4] The ALJ did not assess Plaintiff's GAF score; rather, that score was assessed by Phoenix Interfaith Counseling.  Tr. 554.

depression or anxiety. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (the claimant bears the burden at step two of showing that she has a medically severe impairment or combination of impairments). The medical record does not establish any work-related limitations as a result of Plaintiff's mental impairments. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (upholding nonsevere finding where the medical record does not establish any work-related limitations as a result of an impairment).

Plaintiff also argues that the record indicates ongoing treatment for her chronic pain, and that while some progress is noted, her symptoms persist. Doc. 12, at 19-20. She attributes the lack of medical evidence supporting her alleged disabling limitations to the fact that "physicians are reluctant to provide or fill out functional capacity evaluations and forms, as potentially undermining the doctor-patient relationship, time consuming[,] increasing costs and office paper-work; and instead simply provide copies of the treatment record to speak for itself, or as the case here, referring the patient for an occupational functional capacity evaluation." *Id.* at 21. Plaintiff reasons that because many physician functional capacity forms simply summarize the patients' subjective complaints, her credibility becomes critical. *Id.* She proceeds to argue that "[t]he most salient feature of [her] claim for disability is her credibility, as established by long treating relationships with multiple treating sources, demonstrated by a remarkably consistent medical record documenting the diagnosis of RSD/CRPS and the multiple modalities of treatment." *Id.*

The Court is sympathetic to the fact that Plaintiff continues to experience pain in her right extremities despite a long history of seeking pain management and treatment. But the Court is not convinced that the lack of medical evidence to support the severity of Plaintiff's pain allegations is a result of physicians declining to conduct functional capacity evaluations. The medical evidence simply does not corroborate the level of disabling limitations that Plaintiff alleges.

1    **G.    Side Effects of Medication.**

2        Plaintiff argues that the ALJ erred by failing to acknowledge or discuss the side

3    effects of her pain medication.  Doc. 12, at 22.  Plaintiff cites a January 2009 treatment

4    note at Arrowhead Family Health Center in which she complained that her medication

5    made her feel off balance and slur her words.  Tr. 315.  She also cites her own testimony

6    at the administrative hearing that her medications "have wicked side effects," including

7    some memory loss, fuzzy thoughts, and upset stomach.  Tr. 48.

8        The ALJ must consider the side effects of Plaintiff's medication in evaluating the

9    severity of her symptoms.  20 C.F.R. § 404.1529.  Here, the ALJ considered Plaintiff's

10   allegation that her medication makes her forgetful, along with her other subjective

11   complaints (Tr. 15), and concluded that her statements regarding the intensity,

12   persistence, and limiting effects of these symptoms were generally not credible (Tr. 16).

13       Plaintiff offers no objective evidence that her medications affected her balance,

14   speech, memory, or concentration.  The only evidence regarding these symptoms is her

15   own statement to a nurse practitioner and her testimony at the hearing.  The rest of the

16   medical record does not indicate significant side effects.  Dr. Bucholz repeatedly noted

17   that Plaintiff denied any side effects from her medication.  *See, e.g.*, Tr. 648 (Plaintiff

18   "denies any significant pain issues or side effects"); 651 (Plaintiff "is clearly taking

19   [medication] without serious side effect[s]").

20       Plaintiff's testimony cannot be rejected solely because the objective medical

21   evidence does not support the severity of her impairment, *see Thomas v. Barnhart*, 278

22   F.3d 947, 960 (9th Cir. 2002), but, as discussed above with respect to Plaintiff's pain

23   testimony, the ALJ properly discounted her complaints because they were not consistent

24   with the medical evidence in the record, *id.* (finding that the ALJ properly rejected a

25   claimant's testimony by using "ordinary techniques of credibility evaluation" and

26   providing a specific, clear, and convincing reason, supported by the record, that her

27   testimony was generally not credible).  *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792

28   (9th Cir. 1997) (upholding the ALJ's finding that a claimant generally lacks credibility as

a permissible basis for rejecting the claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding that the ALJ may consider a claimant's reputation for truthfulness, inconsistencies in either her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which she complains).

### H.    Vocational Expert Testimony.

Plaintiff argues that the ALJ erred by ignoring the hypothetical questions posed to the vocational expert that encompassed Ms. Hymen's functional capacity evaluation. Doc. 12, at 22-23.    Based on Ms. Hymen's report, Plaintiff's attorney asked the vocational expert whether a hypothetical person who was unable to perform any moderate or fine function with their dominant hand would be precluded from performing any of Plaintiff's past work or any work in the national economy.  Tr. 80.  The vocational expert responded that these jobs would be precluded.  *Id.*  In hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).  As discussed above, the ALJ did not err in finding that Ms. Hymen's report was not supported by substantial evidence, and thus was not required to include the limitations she assessed in his hypotheticals to the vocational expert.

Plaintiff also argues that the outcome of the hypotheticals varies significantly depending on the amount of time she must rest her right arm.  Doc. 12, at 23.  The ALJ relied on Plaintiff's functional capacity evaluation ("FCE"), which indicated that Plaintiff could sustain 15 minutes of gross arm use before she requires rest.  Tr. 75, 536.   The FCE did not indicate the length of rest required.  Tr. 536.  When the ALJ asked the vocational expert about a hypothetical person who required 5 minutes of rest, the vocational expert responded that the person could still function as a financial services representative or a food service manager.  Tr. 75.   The ALJ then asked about a hypothetical person who was limited to sedentary work and required 5 minutes of rest,

and the vocational expert responded that the person could not perform any of Plaintiff's past work, but could be employed as an appointment clerk or a food and beverage order clerk.  Tr. 76.  When the ALJ asked about a hypothetical person who was limited to sedentary work and required 15 to 30 minutes of rest at a time, however, the vocational expert responded that such a person could not perform any work in the national economy.  Tr. 77-78.

The ALJ did not find that Plaintiff was limited to sedentary work.  *See* Tr. 17 (giving great weight to Dr. Griffith's opinion that Plaintiff could stand or walk for approximately 6 hours in an 8-hour work day).  But neither did the ALJ determine how must rest Plaintiff's right arm would require, and whether that amount of rest would disqualify her for non-sedentary work.  Because the ALJ did not ask whether there would be any jobs in the national economy that Plaintiff could perform if she required 15 to 30 minutes of rest but was not limited to sedentary work, and because the medical records are inconclusive as to the amount of rest Plaintiff requires for her right arm, the Court will remand for a determination of the amount of rest required and whether adding that requirement to the list of restrictive conditions in the ALJ's hypothetical would render a non-sedentary person unable to work.

## I.     Additional Evidence.

Plaintiff has attached new post-hearing evidence to her brief.  The evidence includes March 2011 to March 2012 records from the Pain Center of Arizona that purport to show the same severe pain and treatment regimens providing only short-lived pain relief, and a July 2011 functional capacity evaluation performed by Ms. Hymen.  Doc. 12, at 6.  To the extent Plaintiff implicitly asks the Court to remand this case for consideration of the new evidence, Plaintiff must show that the new evidence is material to her disability and that she had good cause for failing to submit the evidence earlier.  42 U.S.C. § 405(g); *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).  To be material under § 405(g), the new evidence must bear "directly and substantially on the matter in dispute."  *Mayes*, 276 F.3d at 462 (quoting *Ward v. Schweiker*, 686 F.2d 762, 764

(9th Cir. 1982)).    The Ninth Circuit interprets materiality to mean a "reasonable possibility" that the new evidence would have changed the outcome of the ALJ's decision.  *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).

The additional evidence that Plaintiff submits consists of medical records dated after the January 2011 administrative hearing and the ALJ's February 2011 decision. Plaintiff therefore has good cause for not having offered the evidence earlier.  *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative hearing, the good cause requirement is satisfied.").  Plaintiff did not seek out new expert witnesses who might better support her position, *cf. Key*, 754 F.2d at 1551, but seeks to introduce additional medical records from existing providers to demonstrate her ongoing pain, *see Kemp v. Weinberger*, 522 F.2d 967, 979 (9th Cir. 1975) (medical reports made after the relevant disability period are nonetheless relevant where claimant previously introduced evidence of osteoarthritis and where the new evidence reveals that claimant's present arthritic condition is the result of a degenerative process).  Plaintiff's pain and ability to use her right shoulder, arm, and hand were central to her January 18, 2011 administrative hearing.  *Cf. Mayes*, 276 F.3d at 462 ("Mayes' back problems were not significantly at issue at the ALJ Hearing.  Mayes' arguments would have been more persuasive if her back problems had indeed been at issue at the ALJ Hearing, even though not diagnosed until later.").

The Court concludes that the new evidence bears "directly and substantially on the matter in dispute," *Ward*, 686 F.2d at 764, and that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing, *Booz*, 734 F.2d at 1380-81.  On remand, the ALJ should consider the new evidence and assign it the weight he considers appropriate.  The Court does not imply that it thinks the new evidence would change the ALJ's decision.

**IV.    Conclusion.**

Sufficient evidence in the record supports the ALJ's evaluation of Plaintiff's RSD/CRPS, Plaintiff's pain testimony, the opinions of Dr. Griffith, Ms. Hymen, and Plaintiff's mother, Plaintiff's mental impairment, and the side effects of Plaintiff's medication.  The Court will not substitute its own determination for those of the ALJ. *See Young v. Sullivan*, 911 F.2d at 184.  However, because the medical record is unclear as to the length of rest that Plaintiff requires every 15 minutes for her right arm, the Court will remand to resolve that issue.  The ALJ must then determine whether that restriction, combined with the other restrictions already established, precludes Plaintiff from performing her past work or other work that exists in substantial numbers in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

**IT IS ORDERED:**

1.    Defendant's decision denying disability insurance benefits is **reversed**. This action is remanded for further proceedings consistent with the discussion above.

2.    The Clerk is directed to terminate this action.

Dated this 10th day of July, 2012.

*David G. Campbell*
_____
David G. Campbell
United States District Judge